**ANDRADE GONZALEZ LLP**
SEAN A. ANDRADE [SBN 223591]
sandrade@andradefirm.com
HENRY H. GONZALEZ [SBN 208419]
hgonzalez@andradefirm.com
ARTURO PADILLA [SBN 188902]
apadilla@andradefirm.com
634 South Spring Street, Top Floor
Los Angeles, California 90014
Telephone: (213) 986-3950
Facsimile: (213) 995-9696

Attorneys for Plaintiffs
TIMOTHY LACHENMEIER and KRISTEN LACHENMEIER

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY LACHENMEIER, an individual, and KRISTEN LACHENMEIER, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>THE BOEING COMPANY, a Delaware Corporation, BOEING DEFENSE, SPACE & SECURITY, and DOES 1-10,<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>1. NEGLIGENCE<br><br>2. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br><br>3. LOSS OF CONSORTIUM<br><br><u>DEMAND FOR JURY TRIAL</u> |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Plaintiffs TIMOTHY LACHENMEIER (hereinafter, "TIM" or "TIM LACHENMEIER") and KRISTEN LACHENMEIER (hereinafter "KRISTEN" or "KRISTEN LACHENMEIER") (collectively, the "LACHENMEIERS" or "Plaintiffs"), by and through their attorneys, for causes of action against Defendants THE BOEING COMPANY ("BOEING"), BOEING DEFENSE, SPACE & SECURITY ("BDSS") and DOES 1-10 (collectively "Defendants"), hereby complain and allege as follows:

## NATURE OF THE ACTION

1. On March 27, 2017, TIM LACHENMEIER and Near Space Corporation ("NSC"), a company that TIM founded, were working with BOEING to conduct a high-altitude balloon drop for BOEING to test the parachute recovery system on its new Starliner space capsule that would transport a crew to and from the International Space Station. Both Boeing and SpaceX have won prized commercial contracts with NASA to carry personnel and research to the International Space Station. The March 27 test was one of a series of tests to simulate space reentry by carrying BOEING's capsule to 40,000 feet with a helium balloon and releasing it to test its parachutes as part of the recovery system under the actual conditions it would encounter.

2. For the March 27 test, BOEING and BDSS negligently failed to implement proper safety measures, including, but not limited to, (a) failing to have in place a capsule tie down system to prevent an inadvertent release of the capsule prior to the time of launch which would expose anyone working near the vehicle to substantial and potentially fatal harm, (b) providing to TIM and NSC an inadequate, unsafe, and defective ladder that they knew could cause catastrophic injury, including death or permanent total disability, if something went wrong while

1
COMPLAINT AND DEMAND FOR JURY TRIAL

someone was using it to access the capsule, and (c) failing to provide an adequate grounding system which could have prevented the freak ESD event.

3. BOEING and BDSS knew or should have known that a capsule tie down system would be required to prevent an inadvertent release of the capsule prior to the time of launch which would expose anyone working near the vehicle to substantial and potentially fatal harm. In addition, at least two years before the March 27 test, BOEING and BDSS had banned the use of the type of ladder they provided to TIM and NSC—which was very similar to the common ladders found at a neighborhood hardware stores. BOEING's own Ladder Standard and Fall Protection Guidelines from 2015 mandated using specially designed step platforms with guardrails to safely access its capsules during launch preparations. The ladders also violate the American National Standards Institute's Safety Code. In addition, Boeing failed to provide an adequate grounding system which could have prevented the freak ESD event.

4. BOEING's and BDSS's negligence in providing a suitable capsule restraint system along with their decision to ignore their own ladder safety standards would cause TIM to suffer a catastrophic injury. At approximately 7:00 a.m. on March 27, 2017, TIM was leaning over the top of the BP-4 test capsule, standing on the access ladder that BOEING and BDSS had provided to make the final electronics connections for the launch, when a freak accident occurred: as TIM plugged in the capsule release cable, an electrostatic discharge caused one of the pyro activated cutters to misfire, severing the primary restraint lines holding the balloon to the ground. This static discharge sent the capsule hurling upwards instantly and the force pushed the ladder TIM was standing on backwards and away from the capsule. With no other choice, TIM tried to jump away to safety, but there was nowhere to go. His right foot landed hard on the lowboy trailer on which the capsule was mounted, also provided by Boeing, shattering his ankle, before being hit by the ladder and tumbling

backwards head over heels the rest of the way to the ground.  TIM fell approximately 20 feet, knocking off his hard hat when hit by the ladder, and ultimately landing hard on his neck, back, and hips.

5.  TIM would go on to suffer substantial physical and financial damages, needlessly endure extreme pain and suffering from his resulting catastrophic injuries and multiple surgeries, and, along with KRISTEN, enduring extreme emotional distress from TIM being forced into a below-the-knee amputation of his right leg that left him permanently disfigured or risk death.  Defendants' reckless conduct left the LACHENMEIERS with permanent physical and emotional scars and the LACHENMEIERS therefore seek monetary and punitive damages for their emotional distress and loss of consortium.

## JURISDICTION AND VENUE

6.  Jurisdiction over this action is conferred on this Court pursuant to 28 U.S.C. § 1332.  The parties are residents of different states and the amount in controversy exceeds $75,000.00.

7.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the acts, events, or omissions giving rise to Plaintiff's claims occurred in whole, or in part, in the Central District of California.

## THE PARTIES

8.  During relevant times, Plaintiffs TIM LACHENMEIER and KRISTEN LACHENMEIER were husband and wife and residents of the state of Oregon.

9.  At all times mentioned herein, Plaintiff TIM LACHENMEIER was the President of NSC, and was acting as the Launch Director of NSC.

10.  At all times mentioned herein, Plaintiff KRISTEN LACHENMEIER was the Chief Financial Officer of NSC.

11. Defendant BOEING is a corporation duly organized and existing under the laws of the State of Delaware, with its headquarters and principal place of business in Chicago, Illinois.

12. Defendant BDSS is a business entity of unknown form, with its headquarters in Arlington, Virginia.

13. Plaintiffs are unaware of the true names and capacities, whether individual, partnership, corporate, associate, or otherwise, of those Defendants sued herein as DOES 1 through 10 (the "DOE Defendants") and, therefore, sues these Defendants by fictitious names. The DOE Defendants include employees, representatives, affiliates, and agents of the Defendants, and each of them, and at all times herein relevant were acting within the scope and course of their employment or agency with Defendants, and each of them and the acts and omissions of the DOE Defendants were the proximate cause of the injuries and losses suffered by Plaintiffs. Plaintiffs will amend this Complaint to allege the true names and capacities of the DOE Defendants when ascertained.

14. On or about March 22, 2019, Defendants entered into an agreement with Plaintiffs, tolling the applicable Statute of Limitations until July 29, 2019 (the "Tolling Agreement"). A true and correct copy of the March 22, 2019 Tolling Agreement is attached hereto and incorporated herein by reference as Exhibit "A."

15. The Tolling Agreement has been extended by written agreement of the parties six separate times. The operative Sixth Amendment to the Tolling Agreement, extending the tolling period to November 13, 2020, was executed by the Defendants and Plaintiffs on July 2, 2020. A true and correct copy of the July 2, 2020, Sixth Amendment to the Tolling Agreement is attached hereto and incorporated herein by reference as Exhibit "B."

/ / /

/ / /

16. Defendants' conduct, as alleged herein, was undertaken by its officers, directors, project engineers, and managing agents, who were responsible for corporate policies, underwriting, claims supervision and operational decisions, on behalf of the corporate Defendants. The corporate Defendants had advance knowledge of the actions and conduct of other employees, whose actions and conduct were ratified, authorized, and approved by the corporate Defendants.

17. The LACHENMEIERS are informed and believe, and based thereon allege that, at all times material hereto, each Defendant sued herein was the agent, servant, employer, employee, joint venturer, contractor, partner, owner, subsidiary, division, alias, and/or alter ego of each of the remaining Defendants and was, at all times, acting within the purpose and scope of such agency, employment, contract, ownership, subsidiary, alias, and/or alter ego and with the authority, consent, approval, control, influence, and ratification of each of the remaining Defendants sued herein.

## GENERAL ALLEGATIONS

18. In or around April 6, 2015, Defendants BOEING and BDSS' Commercial Crew Transportation System unit ("CCTS") in Huntington Beach, County of Orange, California, issued a purchase contract for services to NSC (the "Purchase Contract"). Under the Purchase Contract, NSC was to provide Parachute Development and Qualification Test Services as well as to conduct the Parachute Drop Test. NSC's invoices were to be submitted to Defendants' CCTS unit in Huntington Beach, California. The Purchase Contract was executed on April 8, 2015.

19. In the early morning of March 27, 2017, NSC conducted a Parachute System Qualification Balloon Test ("PSQT") at Spaceport America, New Mexico, pursuant to the Purchase Contract with Defendants. During the PSQT, Plaintiff TIM LACHENMEIER served as the Launch Director on behalf of NSC, and participated

during several stages of the PSQT as required by the Purchase Contract. This included making final connections prior to the PSQT launch, with, among other lacking safety measures from Defendants, an inadequate grounding system, lack of a capsule tie down system, and requiring Plaintiff TIM LACHENMEIER to lean over the top of the BOEING BP-4 drop test vehicle (the "BP-4"), while standing on an unsafe and/or defective access ladder supplied by Defendants (the "Ladder").

20. At all relevant times Defendants had a duty under the Purchase Contract to provide and maintain the work area and equipment in a safe condition and free of defects, for NSC's use during the PSQT. In fact, Defendants' Purchase Contract provided that material substitutions made by NSC, would be unauthorized and prohibited, and Defendants maintained control.

21. Pursuant to the Purchase Contract, Defendants provided the capsule, the lowboy trailer on which the capsule was mounted, and the ladders required to access the capsule from the ground. Boeing was also responsible for the all of the ground support equipment for moving and securing the capsule prior to launch, but failed to provide a sufficient capsule tie-down and grounding system. In addition, the Defendants' ladders were inadequate, unsafe, and *knowingly* defective. At least two years before the March 27 test, BOEING and BDSS had banned the use of the type of ladder they provided to TIM and NSC because they knew it could cause catastrophic injury, including death or permanent total disability, if something went wrong while someone was using it to access the capsule.

22. Further Defendants knew, or should have known, that implementing other measures, including providing an adequate grounding system, a capsule tie down system, and constraining the BP-4 capsule during pre-launch test activities, would have prevented the accident.

///

///

23. BOEING and BDSS did not disclose to NSC, TIM, or KRISTEN that (i) they had banned the use of the type of ladder they provided to TIM and NSC, (ii) that BOEING's own Ladder Standard and Fall Protection Guidelines from 2015 mandated using specially designed step platforms with guardrails to safely access its capsules during launch preparations, or (iii) that the ladders they provided to TIM and NSC also violated the American National Standards Institute's Safety Code.

24. Plaintiffs are informed and believe, and on that basis allege, that at all relevant times Defendants negligently failed to comply with standards and guidelines for providing a safe working environment, tie-down system, grounding system, fall restraint, fall protection, and safe ladders which were intended to protect employees and contracted workers at test sites and other work areas against foreseeable harm including foreseeable injuries caused by the use of unsecured ladders which are prone to tipping over.

25. Plaintiffs are informed and believe, and on that basis allege, that while TIM LACHENMEIER was on the ladder making final connections, an electrostatic discharge caused one of the pyro activated cutters to misfire, severing the primary restraint lines holding the balloon to the ground. This static discharge sent the capsule hurling upwards instantly and the force pushed the ladder TIM was standing on backwards and away from the capsule. As a result of the rapid and forceful motion, the ladder pushed away from the BP-4, forcing TIM LACHENMEIER to jump off the ladder but with nowhere to go, his right foot landed hard on the low-boy trailer shattering his ankle, before being hit by the ladder and tumbling backwards head over heels the rest of the way to the ground. TIM fell a total of approximately 20 feet, knocking off his hard hat when hit by the ladder, and ultimately landing hard on his neck, back, and hips.

26. TIM LACHENMEIER's injuries as a result of Defendants' failure to implement proper safety measures, including failing to provide a capsule tie-down

system, an adequate grounding system, and his resulting fall from Defendants' ladder were so catastrophic that among other things, he suffered a severe comminuted closed tibia and fibula pilon fracture with multiple bone fragments. Unfortunately, despite numerous excruciating surgical and other medical procedures on his right leg, TIM LACHENMEIER ultimately needed and underwent a below-the-knee amputation of his right leg on July 3, 2017.

27. During TIM LACHENMEIER's numerous and painful medical procedures, his wife KRISTEN LACHENMEIER was by his side, caring for TIM's severe wounds, and watching her husband suffer relentless and on-going excruciating pain.

28. Plaintiffs' lives have been forever altered as a result of Defendants' negligence. TIM LACHENMEIER is no longer able to perform or fulfill his normal work activities and responsibilities. Moreover, TIM LACHENMEIER will require extensive and costly medical care for the remainder of his life as a result of Defendants' negligence and their reckless disregard for his health and safety, and that of other employees and contractors.

29. Defendants' conduct has further caused TIM LACHENMEIER to suffer loss of companionship with his wife, KRISTEN LACHENMEIER, including but not limited to companionship, comfort, care, assistance, society, and moral support.

30. At all relevant times, KRISTEN was present during TIM's medical treatment, surgeries, doctors' consultations, and when TIM was forced into a below-the-knee amputation of his right leg, or risk death, and cared for TIM's severe wounds, all of which caused her to suffer significant emotional distress, pain and suffering, which is continuous and ongoing. Defendants' negligence caused KRISTEN LACHENMEIER to suffer loss of companionship with her husband,

which is significant and ongoing, and includes, but is not limited to companionship, comfort, care, assistance, society, and moral support.

## FIRST CAUSE OF ACTION
### Negligence
### (Tim Lachenmeier Against All Defendants)

31. Plaintiffs reallege and incorporate each of the preceding and subsequent paragraphs as though fully set forth herein.

32. Defendants owed TIM LACHENMEIER a duty to act reasonably and use due care when he was providing testing and other services within the scope of the NSC's Purchase Contract with Defendants.

33. Defendants breached their duty to TIM LACHENMEIER by, among other things, failing to provide TIM with a safe working environment including a capsule tie-down system, proper grounding system, and a ladder which was free of defects, failed to abide by Defendants' ladder standards, failed to meet fall protection guidelines, and/or failing to implement other safety measures, including a ladder tie down system and constraining the BP-4 capsule during pre-launch test activities, which resulted in TIM LACHENMEIER suffering catastrophic injuries.

34. Defendants' negligent disregard for their own safety standards and rules were the actual and proximate cause of TIM LACHENMEIER's fall and catastrophic injuries. Defendants' conduct caused TIM LACHENMEIER to suffer substantial damages and needlessly endure extreme pain and suffering, which is on-going, from his resulting catastrophic injuries which necessitated the below-the-knee amputation of his right leg and left him permanently disfigured, and requiring continuing surgeries, leaving the LACHENMEIERS with permanent physical and emotional scars.

/ / /

/ / /

/ / /

## SECOND CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**
**(All Plaintiffs Against All Defendants)**

35. Plaintiffs reallege and incorporate each of the preceding and subsequent paragraphs as though fully set forth herein.

36. Defendants engaged in extreme and outrageous conduct, as alleged herein, by:

(a) unreasonably, recklessly, and in bad faith failing to provide TIM LACHENMEIER and NSC with adequate and non-defective equipment to perform his duties under the Purchase Contract with NSC;

(b) unreasonably, recklessly, and in bad faith failing to disclose to NSC, TIM, or KRISTEN that (i) they neglected to provide a capsule tie down and grounding system and that they had banned the use of the type of ladder they provided to TIM and NSC, (ii) that BOEING's own Ladder Standard and Fall Protection Guidelines from 2015 mandated using specially designed step platforms with guardrails to safely access its capsules during launch preparations, or (iii) that the ladders they provided to TIM and NSC also violated the American National Standards Institute's Safety Code; and

(c) after the accident, pressuring TIM and KRISTEN to resume parachute recovery system testing, stating that TIM and KRISTEN were holding up their test, while TIM and KRISTEN were overwhelmed by the stress and worry caused by TIM's rapidly deteriorating condition, causing them to suffer extreme physical and emotional pain.

37. Defendants intended to cause TIM emotional distress or acted with reckless disregard of the probability that TIM would suffer emotional distress, knowing that TIM was present when the conduct occurred.

/ / /

/ / /

38. Defendants conduct, as alleged herein, caused Plaintiff TIM LACHENMEIER to suffer severe emotional distress, including but not limited to suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame.

39. Defendants' conduct, as alleged herein, was a substantial factor in causing Plaintiff TIM LACHENMEIER's severe emotional distress, which would not have occurred but for Defendants' conduct.

40. Defendants intended to cause KRISTEN emotional distress or acted with reckless disregard of the probability that KRISTEN would suffer emotional distress, knowing that KRISTEN was present when the conduct occurred.

41. At all relevant times, KRISTEN was aware of and present during Plaintiff TIM LACHENMEIER's medical conditions and treatment.  Plaintiff KRISTEN LACHENMEIER witnessed Plaintiff TIM LACHENMEIER's injuries, pain, and suffering caused by Defendants.  Plaintiff KRISTEN LACHENMEIER assisted and was present with Plaintiff TIM LACHENMEIER during his numerous surgeries and treatment for his injuries.  Furthermore, Plaintiffs were forced to completely alter their way of living and conducting everyday activities because of Plaintiff TIM LACHENMEIER's catastrophic injury which has permanently disfigured him.

42. Defendants' conduct, as alleged herein, caused Plaintiff KRISTEN LACHENMEIER to suffer emotional distress, including but not limited to suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, and humiliation.

43. Defendants' conduct, as alleged herein, was a substantial factor in causing Plaintiff KRISTEN LACHENMEIER's severe emotional distress, which would not have occurred but for Defendants' conduct.

COMPLAINT AND DEMAND FOR JURY TRIAL

44. Plaintiffs TIM LACHENMEIER and KRISTEN LACHENMEIER are entitled to recover damages for their emotional distress, in the amount to be proven at trial.

45. Defendants' conduct, as alleged herein, was committed maliciously and oppressively with the wrongful intention of injuring Plaintiffs and with a willful and conscious disregard of Plaintiffs' health. Defendants knowingly and intentionally caused Plaintiffs to needlessly endure horrific physical injuries, extreme emotional distress, pain and suffering, loss of consortium, lost wages, and loss of earnings. Accordingly, Plaintiffs are entitled to recover punitive damages in an amount according to proof, in order to punish and to make an example of Defendants and to deter such conduct in the future.

### THIRD CAUSE OF ACTION
**Loss of Consortium**
**(All Plaintiffs Against All Defendants)**

46. Plaintiffs reallege and incorporate each of the preceding and subsequent paragraphs as though fully set forth herein.

47. During relevant times alleged herein, Plaintiffs were a married couple, living together in the State of Oregon.

48. Defendants' conduct, as alleged herein, caused TIM LACHENMEIER a loss of companionship with his wife, KRISTEN LACHENMEIER, including but not limited to the loss of companionship, comfort, care, assistance, society, and moral support.

49. Defendants' conduct, as alleged herein, caused KRISTEN LACHENMEIER a loss of companionship with her husband, TIM LACHENMEIER, including but not limited to companionship, comfort, care, assistance, society, and moral support.

50. Plaintiffs TIM LACHENMEIER and KRISTEN LACHENMEIER are entitled to recover damages for their loss of consortium, in the amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. On the First Cause of Action for Negligence, that the Court enter judgment against Defendants for general, special, and compensatory damages, in an amount to be determined at trial.

2. On the Second Cause of Action for Intentional Infliction of Emotional Distress, that the Court enter judgment against the Defendants for general, special, and compensatory damages, in an amount to be determined at trial.

3. On the Third Cause of Action for Loss of Consortium, that the Court enter judgment against the Defendants for general, special, and compensatory damages, in an amount to be determined at trial.

4. On all Causes of Action:

   a. For general and compensatory damages, in an amount to be determined at trial;

   b. For special and economic damages, in an amount to be determined at trial;

   c. For reasonable attorneys' fees incurred herein and as permitted by law;

   d. For pre-judgment and post-judgment interest;

   e. For payment of the costs of this suit;

/ / /

/ / /

/ / /

      f.     For punitive and exemplary relief; and

      g.     For such other and further relief as this Court may deem proper and just.

DATED: November 12, 2020     **ANDRADE GONZALEZ LLP**

*/s/ Sean A. Andrade*
_____
SEAN A. ANDRADE
HENRY H. GONZALEZ
ARTURO PADILLA
Attorneys for Plaintiffs TIMOTHY LACHENMEIER and KRISTEN LACHENMEIER

# JURY DEMAND

Plaintiffs respectfully request a jury on all issues triable by jury in the above entitled action.

DATED:  November 12, 2020

**ANDRADE GONZALEZ LLP**

*/s/ Sean A. Andrade*
_____
SEAN A. ANDRADE
HENRY H. GONZALEZ
ARTURO PADILLA
Attorneys for Plaintiffs
TIMOTHY LACHENMEIER and
KRISTEN LACHENMEIER

**ANDRADE GONZALEZ LLP**
634 South Spring Street, Top Floor
Los Angeles, California 90014
Tel: (213) 986-3950   Fax: (213) 995-9696

15
COMPLAINT AND DEMAND FOR JURY TRIAL